```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

  CHRISTOPHER BELLORE,

                    Plaintiff,           MEMORANDUM & ORDER
                                            20-CV-2306(EK)
         -against-

  KILOLO KIJAKAZI, ACTING COMMISSIONER
  OF SOCIAL SECURITY,

                    Defendant.

-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Plaintiff Christopher Bellore challenges the Social Security Administration's denial of his claim for disability insurance benefits.[1] Before the Court are the parties' cross-motions for judgment on the pleadings. For the following reasons, I grant the Commissioner's motion and deny Plaintiff's cross-motion.

## I.  Background

### A.  Procedural Background

Plaintiff applied for disability benefits on April 13, 2017, alleging a disability onset date of May 30, 2016. The agency initially denied his claim. Plaintiff appeared for a

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul, former Commissioner of Social Security, as the Defendant in this suit. *See* 42 U.S.C. § 405(g). The Clerk of Court is respectfully directed to update the caption accordingly.

hearing before an administrative law judge ("ALJ") in March 2019; the ALJ concluded that Plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, rendering it final.  This appeal followed.

**B.   The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims.  20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity.  *Id.* § 404.1520(b).  If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" the claimant's physical or mental ability to do basic work activities."  *Id.* § 404.1520(c).  If the ALJ identifies a severe impairment, then at step three, she must determine whether it meets or equals one of the impairments listed in Appendix 1 of

2

the regulations (the "Listed Impairments"). *Id.* § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, app. 1. If it does, the ALJ will deem the applicant disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

Here, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of his disability and that Plaintiff had the following severe impairments: right shoulder rotator cuff disorder, carpal tunnel syndrome, degenerative partial tear of the distal attachment of the first plantar plate, degenerative disc disease, lymphedema, obesity, and edema of the bilateral lower extremities. Administrative Transcript ("Tr.") 12, ECF No. 11. The ALJ determined, however, that none of these impairments rose to the level of a "Listed Impairment." Tr. 12-13.

When an ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings, he or she must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can do in a work setting notwithstanding his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ concluded here that Plaintiff had the residual capacity to perform "light work" with limitations. Tr. 13. Those limitations included no overhead reaching with the right upper extremity, only frequent reaching in all directions, and only frequent fine and gross manipulation. *Id.*

3

At step four, the ALJ considered whether, in light of the RFC determination, Bellore could perform "past relevant work." 20 C.F.R. § 404.1520(f). He found that Bellore could not perform his past work as a garbage collector driver and dump truck driver. Tr. 19. At step five, the ALJ evaluated whether the claimant could perform jobs existing in significant numbers in the national economy. *Id.* § 404.1520(g). He determined that Plaintiff could perform such jobs, including as a marker, router, and storage facility rental clerk. Tr. 19-20. Given that conclusion, the ALJ concluded that Plaintiff was not disabled. Tr. 20.

## II. Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotations omitted). "[I]f supported by

4

substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

### III. Discussion

Plaintiff raises two arguments. First, he asserts that the ALJ's RFC determination was not supported by substantial evidence because the ALJ declined to credit — at least fully — the opinions of Plaintiff's treating physicians. Second, he asserts that the SSA's vocational expert incorrectly asserted that Plaintiff could perform certain jobs that require frequent reaching.

**A.    Treating Physicians' Opinions**

Plaintiff challenges the ALJ's assessment of the opinions of two treating physicians who called for a more limited RFC finding than the ALJ ultimately settled on. The physicians in question were Dr. Perez, a physical medicine specialist who "opined that the claimant was unable to maintain any type of gainful employment for the foreseeable future, and likely permanently," Tr. 18; and Dr. Beylinson, a Doctor of Osteopathic Medicine who opined that Bellore could sit for no more than two hours in an eight-hour workday and stand or walk for no more than one. Tr. 18. The ALJ determined that these opinions were only "partially persuasive" in light of the fuller

5

record.[2] Bellore contends that, because the ALJ discounted these opinions without relying explicitly on one or more contrary opinions, the ALJ must have based his RFC conclusion on his own lay assessment of the evidence.

The Social Security Administration repealed its "treating physician rule" prior to Bellore's application for benefits.[3] Under the revised regulations applicable here, the Commissioner "no longer needs to assign particular evidentiary weight to treating sources or their opinions." *Vellone v. Saul*, No. 20-CV-0261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Vellone ex rel. Vellone v. Saul*, No. 20-CV-0261, 2021 WL 2801138 (S.D.N.Y. July 6, 2021). The SSA commits itself to "articulate in [its] determination or decision how persuasive we find all of the medical opinions" in the case record. 20 C.F.R. § 404.1520c(b).

The new regulations require an ALJ to evaluate medical opinions and findings based on factors including, among others: (1) their supportability (*i.e.*, the extent to which a source

---

[2] A consultative examiner appointed by the SSA, Dr. Ducena, opined that Bellore had "no limitation" in his ability to sit, stand, walk, lie down, or lift weight. Tr. 18. To Bellore's *benefit*, the ALJ discounted this opinion entirely, finding it "not persuasive, as it is in stark contrast with the objective and treating evidence of record." *Id.*

[3] As noted above, Plaintiff filed his application with the SSA on April 13, 2017. The treating physician rule was repealed effective March 27, 2017, and replaced by new regulations set forth in 20 C.F.R §§ 404.1520c, 416.920c. *See, e.g.*, *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021).

6

explains his or her opinion, and supports it with objective medical evidence); (2) consistency (*i.e.*, the extent to which it is consistent with other evidence — medical and nonmedical — in the record), (3) the source's relationship with the claimant (including the length of the relationship and frequency of visits), and (4) the source's specialization (*i.e.*, education and training).  20 C.F.R. §§ 404.1520c(c).

The first two factors above — supportability and consistency — are the "most important factors," *see id.* § 404.1520c(b)(2); accordingly, the ALJ is required to explain his consideration of them.  *Id.*  The regulation does not require the ALJ to explain his consideration of the remaining factors.  *Id.*  These are not especially formalistic requirements.[4]  In the end, an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," so long as he has weighed "all of the evidence available to make an RFC finding that was consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

Here, the ALJ based his RFC determination on a comprehensive review, spanning more than five single-spaced pages, of the record evidence as a whole.  Tr. 14–19.  The ALJ

---

[4] Even when the treating physician rule applied, the ALJ was still free to discount a treating physician's opinion as long as he provided "good reasons" for doing so.  *E.g.*, *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

7

discussed, for example, Dr. Taormina's opinion that Bellore's neck and back issues could be managed with "continued conservative management." Tr. 17. A treating physical therapist, Alex Manu, observed that Bellore "did not need a cane for ambulation, his balance was not limited, gait . . . and step length . . . were normal." *Id.*

The ALJ also observed that several of the restrictions set forth in the doctors' RFC opinions were at odds with the broader record. Tr. 16–17, 686, 693. Dr. Perez's opinion that Bellore was "likely permanently" unable to maintain gainful employment, the ALJ observed, did not "adequately consider the claimant's self-reported retained physical capacity for . . . activities of daily living." Tr. 18. And while Dr. Beylinson limited Plaintiff to less than one hour of standing and walking in an eight-hour day, Tr. 696, and Dr. Perez limited Plaintiff to two hours, Tr. 745, Plaintiff's physical examinations consistently showed a steady gait and intact sensation in Plaintiff's lower extremities. Tr. 16. The ALJ also observed that Dr. Perez and Beylinson overstated Bellore's upper-body limitations. Tr. 15. These doctors opined that Plaintiff had significant limitations in reaching overhead and in handling, fingering, and feeling, Tr. 696, 745, but the ALJ cited physical examinations showing full range of motion in Plaintiff's back

8

and joints, as well as normal strength, reflexes, and sensation. Tr. 15, 18, 379, 448.

The treating physicians' intentions were also at odds with Bellore's own statements, in several ways. In 2019, for instance, he reported that he had applied for lighter duty jobs with the expectations of being able to perform them. Tr. 72-73. *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (where a treating physician's "assessment of [claimant's] limitations was inconsistent with," among other things, the claimant's "self report of her activities of daily living," the ALJ properly discounted that assessment). The ALJ also noted the tension between the treating physicians' extreme limitations, on the one hand, and Bellore's recent work history, on the other: Plaintiff had worked as a truck driver and a grocery stocker through August 2016 and for some time in 2017, Tr. 15-16, 69, 304, 434, 437, in addition to seeking the "light" jobs mentioned above. *See* 20 C.F.R. § 404.1571 ("The work . . . that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level."); *see also Varnum v. Colvin*, No. 15-CV-6269P, 2016 WL 4548383, at *14 (W.D.N.Y. Sept. 1, 2016) (discounting a treating physician's opinion because "the limitations assessed by [the physician] were inconstant with [the claimant's] work history").

9

In sum, the ALJ properly resolved the conflicts in the medical evidence, weighing the doctors' opinions against other medical records indicating Plaintiff's condition. In recognition of Plaintiff's serious but manageable impairments, the ALJ limited Plaintiff's RFC to light work with limitations. This assessment reflects a careful balancing of Plaintiff's abilities and limitations and is supported by substantial evidence.

**B.    Vocational Expert Testimony**

Plaintiff also challenges the ALJ's reliance on the Vocational Expert's ("VE") testimony that there were jobs in the national economy Plaintiff could perform despite his limitations was unsupported.

The ALJ asked the VE what kinds of jobs a person with Plaintiff's limitations could be expected to perform. *Id.* The VE responded that such a person could perform unskilled, light work in occupations such as a marker, a router, and a storage facility rental clerk. Tr. 84. The ALJ inquired: "Any distinction from the DOT [Dictionary of Occupational Titles] such as the no overhead reaching with the right upper extremity[?]" *Id.* In response, the VE stated that these occupations did require reaching but not necessarily overhead reaching, as "the DOT does not address in what direction reaching is being performed." *Id.* at 85. The VE stated: "based

10

on my knowledge of how these jobs are performed, they could be performed within the restriction of no overhead reaching with the right upper extremity." *Id.*

The VE properly accounted for Plaintiff's reaching limitation. In the Second Circuit, discrepancies between the testimony of a VE and the DOT are not inherently problematic; the DOT describes occupations as they are "generally performed," while an expert may elucidate the specific "requirements of particular jobs." *Jasinski v. Barnhart*, 341 F.3d 182, 184-85 (2d Cir. 2003). Nevertheless, "whenever the Commissioner intends to 'rely[] on [a] vocational expert's testimony,' she must identify and inquire into all those areas 'where the expert's testimony seems to . . . conflict with the Dictionary." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 92 (2d Cir. 2019). Further, the ALJ must "'obtain a reasonable explanation' for any '*apparent*' – even if non-obvious – conflict between the Dictionary and a vocational expert's testimony . . . which the ALJ may accept as reasonable after evaluation." *Id.*

The hearing transcript shows that the ALJ elicited testimony that reconciled any seeming discrepancy between the DOT and the VE's conclusion. The VE explained why, despite minor inconsistencies, the Plaintiff could still work at these jobs. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) ("When offering testimony, the experts may invoke not only

11

publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'"); *Franklin v. Saul*, 482 F. Supp. 3d 250, 268 (S.D.N.Y. 2020) ("VE did explain that she was relying on her experience in giving her testimony. The VE is allowed to rely on her experience in such circumstances."); *Hallman v. Comm'r of Soc. Sec.*, No. 19-CV-00683, 2020 WL 3259255, at *5 (W.D.N.Y. June 16, 2020) (Wehrman, M.J.) (accepting as a reasonable the following explanation provided by the VE: "although the DOT doesn't address some issues such as being off task. For that testimony – it also does not address reaching, handling, fingering, and fingering in terms of direction; only in frequency. So for that testimony . . . I always rely on my experience in disability management."). The ALJ did not err by relying on the VE's testimony.

## IV. Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings and denies

12

the Plaintiff's cross-motion.  The Clerk of Court is respectfully requested to enter judgment and close this case.

      SO ORDERED.

                                             /s/ Eric Komitee
                                          ERIC KOMITEE
                                          United States District Judge

Dated:    March 30, 2022
           Brooklyn, New York